ATTORNEY FOR APPELLANT

Bruce R. Snyder
P. Stephen Miller
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Modisett
Attorney General of Indiana

Kathryn Janeway
Deputy Attorney General

Indianapolis, Indiana

 IN THE

 SUPREME COURT OF INDIANA

RICKY WARLICK, )
 )
 Appellant (Defendant Below), )
 )
 v. ) Indiana Supreme Court
 ) Cause No. 02S00-9810-CR-539
STATE OF INDIANA, )
 )
 Appellee (Plaintiff Below). )

 APPEAL FROM THE ALLEN SUPERIOR COURT
 The Honorable John Surbeck, Jr., Judge
 Cause No. 02D04-9606-CR-259

 ON DIRECT APPEAL

 January 27, 2000

BOEHM, Justice.
 Ricky Warlick pleaded guilty to murder and burglary as a Class A
felony. The State sought a sentence of life imprisonment without parole,
alleging that Warlick intentionally killed while committing a burglary.
Warlick was sentenced to life imprisonment without parole on the murder
count, to be served concurrently with a thirty year sentence for burglary.
In this direct appeal of that sentence, Warlick contends that (1) the trial
court considered non-statutory aggravators; (2) the trial court failed to
consider mitigating circumstances clearly supported by the record; and (3)
the trial court improperly weighed the aggravating and mitigating
circumstances. We affirm the trial court.

 Factual and Procedural Background

 At approximately 6:00 a.m. on June 13, 1996, Annie Warlick was lying
on the sofa of her sister’s home where she had been staying for several
weeks. She was holding her infant daughter, Tekia, and her brother was
sitting at the other end of the sofa. Warlick, Annie’s estranged husband,
entered the home, put a gun to Annie’s head, and fired two shots. Warlick
then turned and walked out of the house. He drove away, threw the gun out
the car window, and went to his aunt’s home where he told her of the
killing and asked her to take him to the police department. Warlick’s aunt
called his father, who upon his arrival told her to call 911, which she
did.
 Warlick was charged with murder, burglary as a Class A felony, and
criminal recklessness as a Class D felony. The State initially sought the
death penalty, alleging that Warlick had intentionally killed Annie while
committing or attempting to commit burglary. See Ind. Code § 35-50-2-
9(b)(1)(B). That count was later dismissed at the request of the victim’s
family and replaced with a request for life without parole, based on the
same aggravator.
 On February 5, 1998, Warlick pleaded guilty to all counts without a
plea agreement. After the penalty phase hearing, the trial court found that
Warlick intentionally killed Annie during the commission of a burglary. It
found Warlick’s remorse as the sole mitigating circumstance, found that the
aggravating circumstance “substantially outweigh[ed]” the mitigating
circumstance, and imposed a sentence of life without parole on the murder
count, to be served concurrently with a term of thirty years for the
burglary count. The State dismissed the criminal recklessness count.

 I. Non-Statutory Aggravators

 Warlick contends that the trial court erred in considering non-
statutory aggravating circumstances in imposing a sentence of life without
parole. In Bivins v. State, 642 N.E.2d 928, 955 (Ind. 1994), this Court
held that trial courts, in deciding whether to impose a sentence of death,
are limited by the aggravating circumstances specified in the death penalty
statute. See Ind. Code § 35-50-2-9(b). The same rule applies to life
imprisonment without parole. See Farber v. State, 703 N.E.2d 151, 153
(Ind. 1998); Ajabu v. State, 693 N.E.2d 921, 936 (Ind. 1998) (“The statute
provides that life without parole is imposed under the same standards and
is subject to the same requirements.”).
 Warlick points to three alleged aggravators that he contends the trial
court impermissibly considered. First, he quotes the trial court’s
statement at the sentencing hearing that he “forced his way into the house
contrary to a protective or restraining order . . . .” He contends that
the use of the word “force” was impermissible because the evidence at the
guilty plea hearing was that he “just walked up the step, opened the door
and walked in the house.” The word “force” does not appear in the trial
court’s sentencing order, which states that Warlick “without authority or
invitation, entered the residence of Annie Warlick contrary to a
restraining or protective order.” The trial court’s use of the word
“force” at the sentencing hearing, if error at all, is harmless because it
was not included in the sentencing order. See Prowell v. State, 687 N.E.2d
563, 565 (Ind. 1997).
 Second, Warlick asserts “since the violation of a protective order was
not alleged, considering it as an aggravator was also impermissible.” As
this Court observed in Prowell, a death penalty case,
 the circumstances of the crime often provides an appropriate context
 for consideration of the alleged aggravating and mitigating
 circumstances. Inclusion of the nature and circumstances of the
 offense in a trial court’s sentencing order does not necessarily
 compel a conclusion that such matters were improperly considered and
 weighed as aggravating circumstances.

Id. at 567. Similarly, in Holmes v. State, 671 N.E.2d 841, 850 (Ind.
1996), this Court found that
 the trial judge’s references in the sentencing order to premeditation,
 deliberation, moving intently from one killing to the next, and the
 use of extreme force and torture, makes i[t] perfectly clear that she
 was considering the manner in which the aggravators occurred for the
 sole purpose of giving an appropriate weight to those proved
 aggravators.

Cf. Stevens v. State, 691 N.E.2d 412, 437 (Ind. 1997) (“Even if the facts
articulated in the judge’s surplus statement indicate some influence on his
decision, they appear mostly to be restatements of facts which would fall
within the charged aggravating factors.”). In light of these authorities,
we find no error in the trial court’s mention of the violation of a
restraining or protective order.[1] The court was merely describing the
nature of the offense and restating facts necessary to determine the
appropriate weight to be given to it, not finding a separate improper
aggravator.
 Finally, Warlick argues that it was improper for the trial court to
consider that the killing was “with total disregard for the minor child
held by the victim Annie P. Warlick . . . .” He contends that this was not
part of the burglary alleged as a statutory aggravator and that the facts
show that he did not know until after the shooting that his daughter was in
Annie’s arms. As explained above, trial courts are given some latitude in
describing the nature of the statutory aggravating circumstance in order to
determine the appropriate weight to give it. The trial court’s observation
was supported by the evidence. Although Warlick stated at the guilty plea
hearing that he “didn’t even notice my daughter laying there till after I
shot,” when asked if he had taken “any concern if anybody was with Annie at
all,” he responded that he had not. In sum, there was an adequate factual
basis for this statement in the trial court’s sentencing order and its
mention did not violate Bivins.

 II. Failure to Consider Mitigating Circumstances

 The trial court found Warlick’s remorse as the sole mitigating
circumstance. Warlick contends that the trial court should have also found
as mitigating circumstances his lack of criminal history and “acceptance of
responsibility” by surrendering to police.
 The allegation that the trial court failed to find mitigating
circumstances requires Warlick to establish that the mitigating evidence is
both significant and clearly supported by the record. See Carter v. State,
711 N.E.2d 835, 838 (Ind. 1999). We review the trial court’s finding of
mitigating circumstances for an abuse of discretion. See Penick v. State,
659 N.E.2d 484, 488 (Ind. 1995).
 As to the first of these, Warlick points to the following comment by
the State: “The only possible mitigator that I could see here is that he
has a lack of significant criminal history. Not a lack of any criminal
history but a lack of a significant criminal history . . . .”[2] One of
Warlick’s attorneys later argued as mitigation that Warlick’s
 crimes have all been misdemeanors prior to this time and they’ve all
 involved his former wife, Annie Warlick. The only place that’s not
 100% true is that he had a reckless driving and he had a resisting
 arrest involving an assault back in Tennessee when he was roughly
 twenty-nine years old.

Nevertheless, the trial court rejected this proffered mitigating
circumstance, observing that Warlick’s criminal history “certainly is
significant and I suppose as a matter of hindsight it’s what led up to
where we are today, a series of domestic batteries, invasion of privacies,
all involving domestic type of matters.” This was not an abuse of
discretion.[3]
 Nor did the trial court abuse its discretion by failing to find
Warlick’s surrender to the police to be mitigating. Warlick shot Annie in
plain view of her brother who was sitting a few feet away. Had he not
surrendered, he would no doubt have been apprehended in short order.
Compare Battles v. State, 688 N.E.2d 1230, 1237 (Ind. 1997) (“[D]efendant’s
eventual capture and arrest were nigh unavoidable, and we cannot say that
the trial court abused its discretion in failing to find that his voluntary
statement to police was a mitigating circumstance entitled to any
significant weight.”) with Brewer v. State, 646 N.E.2d 1382, 1386 (Ind.
1995) (“[A]ppellant had clearly succeeded in escaping responsibility for
the heinous crime that he had committed nearly fifteen years before. His
surrender and subsequent confession provided a major benefit to the
community; that benefit to society should be reflected in the sentence
imposed.”).

 III. Weighing the Aggravating and Mitigating Circumstances

 As a final point, Warlick argues that the trial court failed to
properly weigh the aggravating and mitigating circumstances. He concedes
that the trial court has discretion in determining what weight to assign to
these factors, but nonetheless contends that the trial court gave too much
weight to the aggravating circumstance and not enough weight to the
mitigating circumstances. His argument regarding the aggravating
circumstance relies on Justice DeBruler’s concurring opinion in Matheney v.
State, 583 N.E.2d 1202, 1210 (Ind. 1992): “[W]here the intent of the
burglary is the intent to kill, the weight of the aggravator is greatly
diminished, for the mind had formed but a single felonious intent.” The
majority opinion did not embrace this view but rather held: “The General
Assembly could reasonably have determined that a murder committed by
breaking and entering a dwelling in the place where a person should be able
to feel secure, merited the death penalty.” Id. at 1208. Although the
aggravating circumstance here, and in Matheney, may not be the weightiest
one, the trial court was certainly allowed to give it considerable weight.
 Warlick also argues that the trial court did not give enough weight
to the mitigating circumstances. However, as explained in Part II., supra,
the trial court did not abuse its discretion by failing to find Warlick’s
criminal history or acceptance of responsibility as mitigating
circumstances. Therefore, what remains is Warlick’s remorse after the
offense as the sole mitigating circumstance to be weighed against his
intentional killing of Annie during the course of a burglary as an
aggravating circumstance. The trial court concluded that “[t]he
aggravating circumstance of the intentional killing by the defendant, Ricky
P. Warlick, Sr. of the victim, Annie Warlick, during the commission of a
felony burglary, substantially outweighs the mitigating circumstance of the
defendant[’]s remorse.”
 Although this Court has the constitutional authority to review and
revise sentences, Ind. Const. art. VII, ' 4, it will not do so unless the
sentence imposed is Amanifestly unreasonable in light of the nature of the
offense and the character of the offender.@ Ind. Appellate Rule 17(B).[4]
This Court=s review under Rule 17(B) is very deferential to the trial
court: A[T]he issue is not whether in our judgment the sentence is
unreasonable, but whether it is clearly, plainly, and obviously so.@
Prowell v. State, 687 N.E.2d 563, 568 (Ind. 1997). The nature of the
offense, the premeditated killing of one’s estranged wife by shooting her
at close range without provocation, is severe and troubling. Weighed
against the character of the offender, a man who showed remorse after the
fact but had a history of misdemeanor domestic offenses against the victim,
does not lead us to conclude that a sentence of life imprisonment without
parole is manifestly unreasonable.

 Conclusion

 The judgment of the trial court is affirmed.

 SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.
 SULLIVAN, J., concurs in result.
-----------------------
[1] Although Warlick’s principal brief merely asserts that the violation
of a protective order was not alleged, his reply brief adds that “[t]he
only evidence of a restraining order at the penalty phase was the mention
of a ‘restraining order’ the terms of which were not discussed and the
existence of which was never formally determined.” He further points out
that its existence “was based solely on hearsay.” However, Warlick did not
object to this testimony and the “[f]ailure to object at trial waives any
claim of error and allows otherwise inadmissible hearsay evidence to be
considered for substantive purposes and to establish a material fact at
issue.” Allen v. State, 686 N.E.2d 760, 775 (Ind. 1997).
[2] The death penalty statute lists “[t]he defendant has no significant
history of prior criminal conduct” as a mitigating circumstance. Ind. Code
§ 35-50-2-9(c)(1) (1998). This language differs from the non-capital
sentencing statute which provides as a mitigating circumstance that the
defendant “has no history of delinquency or criminal activity, or the
person has led a law-abiding life for a substantial period before
commission of the crime.” Id. § 35-38-1-7.1(c)(6). In the non-capital
context, a single conviction or juvenile adjudication may negate this
mitigating circumstance. See, e.g., Bufkin v. State, 700 N.E.2d 1147, 1153
(Ind. 1998). In the capital context, however, the language of the statute
suggests that something more is required to constitute a “significant”
criminal history.
[3] As we recently observed in reviewing a sentence in a non-capital case,
“[s]ignificance varies based on the gravity, nature and number of prior
offenses as they relate to the current offense.” Wooley v. State, 716
N.E.2d 919, 929 n.4 (Ind. 1999). Here, Warlick was convicted of murdering
the same woman against whom he had committed other domestic offenses.
[4] Warlick points to Article I, § 16 of the Indiana Constitution.
However, the prohibition against cruel and unusual punishment is “aimed at
the kind and form of punishment, rather than the duration and amount.”
Ratliff v. Cohn, 693 N.E.2d 530, 542 (Ind. 1998) (quoting Wise v. State,
272 Ind. 498, 502, 400 N.E.2d 114, 117 (1980)). See also Lawrence v.
State, 268 Ind. 330, 339-40, 375 N.E.2d 208, 213-14 (1978) (sentence of
life imprisonment does not violate Article I, § 16).