**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 31 2014, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID T.A. MATTINGLY**
Mattingly Legal, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOUIS P. FROMER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1306-CR-272 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1212-FA-16

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Louis P. Fromer appeals his conviction and sentence for class A felony dealing in a schedule II controlled substance following a jury trial. He argues that the trial court abused its discretion when it permitted the State to belatedly amend the information to add a habitual substance offender charge. He further asserts that the State presented insufficient evidence to sustain his conviction and that his sentence is inappropriate in light of the nature of the offense and his character. Concluding that the trial court did not abuse its discretion and that the State presented sufficient evidence, we affirm Fromer's conviction. We further conclude that Fromer has failed to demonstrate that his sentence is inappropriate and affirm his sentence. However, we remand to the trial court to correct the sentencing order regarding the habitual substance offender enhancement.

**Facts and Procedural History**

The facts most favorable to the verdict indicate that Collin MacDonald became acquainted with Fromer when the two worked a couple painting jobs together. In December 2012, MacDonald saw Fromer outside a fast-food restaurant and approached him. MacDonald, who often used prescription painkillers without a prescription, inquired whether Fromer "had any pills." Tr. at 120. Fromer gave MacDonald his phone number. MacDonald subsequently sent a text message to Fromer asking him if he would be willing to trade some pain pills for an old computer. Fromer gave MacDonald six or eight pills in exchange for the computer.

On December 20, 2012, MacDonald sent a text message to Fromer asking him "if anything was around." *Id.* at 127-28, State's Ex. 5(C). Fromer responded, "Tabbies. Interested?" *Id.* MacDonald understood Fromer to be using slang for Lortabs, pills that contain hydrocodone. Fromer went on to explain that the pills he had were "the white ones" and were "stronger" because they contained "less Tylenol." *Id.* Fromer indicated to MacDonald that his white pills contained 10 milligrams of hydrocodone but only 325 milligrams of acetaminophen as opposed to the 500 milligrams of acetaminophen found in other pills. *Id.* After MacDonald explained to Fromer that he had no cash, Fromer informed MacDonald that he had a Square credit card reader and could accept credit card payment for the Lortabs.

MacDonald walked to Fromer's residence. When MacDonald arrived, Fromer was holding his cell phone with the Square credit card reader attached to it. Fromer first swiped MacDonald's credit card in the amount of $55, but the transaction was declined due to insufficient funds. Fromer attempted to swipe MacDonald's credit card two more times with lower dollar amounts, but the transactions were declined each time. After MacDonald's credit card was declined a fourth time, MacDonald left the residence and later returned with his mother's credit card. MacDonald used that credit card to pay Fromer $61 for twelve pills. Fromer gave MacDonald twelve pills from a pill bottle that contained more pills. When MacDonald later ingested the pills, he experienced the same physical feeling that he had experienced on prior occasions when he ingested pills that contained hydrocodone.

3

Officers from the West Lafayette Police Department subsequently executed a search warrant at Fromer's residence. Fromer's residence was located 403 feet from West Lafayette Junior and Senior High School. Officers seized Fromer's cell phone, a Square credit card reader, and several empty prescription pill bottles. On December 31, 2012, the State charged Fromer with: Count I, class A felony dealing in a schedule II controlled substance; Count II, class B felony dealing in a schedule II controlled substance; and Count III, class B felony conspiracy to commit dealing in a schedule IV controlled substance. The State also filed a notice of intent to file a habitual substance offender information.

On April 24, 2013, the State filed a motion to add a habitual substance offender charge as count IV, arguing that it had good cause for the belated charge. Fromer moved to dismiss that charge. Following a hearing, the trial court denied Fromer's motion to dismiss. A jury trial began on May 29, 2013. The jury found Fromer guilty on counts I, II, and III. In a bifurcated proceeding, the trial court found Fromer guilty on count IV. During sentencing, the trial court merged counts II and III into count I and entered judgment of conviction for one count of class A felony dealing in a schedule II controlled substance. The court imposed a forty-year sentence for the class A felony dealing conviction and a five-year sentence based upon the habitual substance offender finding. The court ordered the habitual substance offender sentence to be served consecutive to the sentence imposed on the dealing conviction. This appeal followed.

**Discussion and Decision**

**Section 1 – Filing of Habitual Offender Charge**

Fromer first contends that the trial court abused its discretion in permitting the State to belatedly amend the information to add a habitual substance offender allegation. Indiana Code Section 35-34-1-5(e) provides that an amendment of an information to include a habitual offender charge "must be made not later than ten (10) days after the omnibus date." The trial court, however, may permit the filing of a habitual offender charge at any time before the commencement of trial "upon a showing of good cause." Ind. Code § 35-34-1-5(e);[1] *White v. State*, 963 N.E.2d 511, 514 (Ind. 2012).

Here, Fromer was charged with three criminal counts on December 31, 2012. During the initial hearing, on January 2, 2013, the trial court set the omnibus date for January 11, 2013.[2] Although the State filed its notice of intention to file a habitual substance offender information on January 4, 2013, the State did not file its motion to add the habitual substance offender charge until well after the omnibus date, on April 24, 2013. In response to the State's motion to add the habitual substance offender charge, Fromer filed a motion to dismiss the charge as untimely. Following a hearing, the trial court denied Fromer's motion

---

[1] This statute was amended effective July 1, 2013, and now provides in relevant part that amendments to include a habitual offender charge "must be made at least thirty (30) days before the commencement of trial" or at any time before the commencement of trial upon a showing of good cause if the amendment does not prejudice the substantial rights of the defendant. Ind. Code § 35-34-1-5(e).

[2] It is unclear from the record why the omnibus date was set a mere nine days after the initial hearing. Indiana Code Section 35-36-8-1(2) provides that the omnibus date for a person charged with a felony must be no earlier than forty-five days and no later than seventy-five days after the completion of the initial hearing, unless both parties agree to a different date. Fromer notes that the omnibus date was "set without objection." Appellant's Br. at 2.

to dismiss and permitted the State to add the charge. Fromer maintains that the State failed to establish good cause for the untimely filing of the habitual charge. We disagree.

By permitting the State to file a habitual offender count, the trial court here impliedly found good cause. *See Jackson v. State*, 938 N.E.2d 29, 39 (Ind. Ct. App. 2010). We review a trial court's finding of good cause only for an abuse of discretion. *Id*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*.

The State articulated its grounds for good cause both in its written motion requesting permission to file the habitual substance offender charge and during the motion-to-dismiss hearing. The State indicated that ongoing plea negotiations prevented earlier filing of the habitual substance offender charge. Specifically, the State indicated that it was unaware that Fromer had formally rejected a prior plea offer until he filed his speedy trial motion on April 18, 2013, more than three months after the omnibus date had passed. The State additionally claimed that it had made an additional open plea offer just prior to the motion-to-dismiss hearing. The State gave further good cause justification by informing the court that it had experienced delay in obtaining certified copies of Fromer's out-of-state prior convictions. On the record presented, we cannot say that the trial court's finding of good cause is clearly against the logic and effect of the facts and circumstances.

Moreover, we note that "[t]he purpose of Indiana Code Section 35-34-1-5(e) is to allow a defendant sufficient time to prepare a defense to the habitual offender charge." *Id*. Thus, "[a] defendant who challenges the State's filing of [a] habitual offender allegation on

the ground that it is filed outside the time limit must demonstrate that he was prejudiced." *Id.* (quoting *Land v. State*, 802 N.E.2d 45, 53 (Ind. Ct. App. 2004), *trans. denied*). Fromer makes no argument on appeal that he was prejudiced by the untimely filing of the habitual substance offender charge. Indeed, his counsel conceded during the motion-to-dismiss hearing that he did not believe that Fromer was prejudiced. Tr. at 25. Absent an abuse of discretion or prejudice, Fromer has established no grounds for relief.

## Section 2 – Sufficiency of the Evidence

Fromer next contends that the State presented insufficient evidence to sustain his class A felony dealing conviction.[3] When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We neither reweigh the evidence nor assess witness credibility. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence, and we will affirm the defendant's conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003).

Fromer's sole argument is that the State failed to present sufficient evidence to establish that the substance he sold was, in fact, hydrocodone. For offenses involving controlled substances, the State need not introduce the subject contraband to obtain a

---

[3] Although Fromer appears to challenge the sufficiency of the evidence on all three original counts, the trial court merged his convictions and entered judgment of conviction only on count I. Therefore, we address the sufficiency of the evidence for that conviction.

7

conviction for dealing or possession. *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009). "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id*. Indeed, "the opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence." *Boggs*, 928 N.E.2d at 865 (citing *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001)).

MacDonald, an admitted prescription drug abuser, testified that, through text messaging, he arranged to buy pills from Fromer. Fromer explained to him that he was selling "Tabbies," which is street slang for Lortabs, pills that contain hydrocodone. Tr. at 128, 151-52. Fromer explained to MacDonald the milligram concentration of hydrocodone to acetaminophen in the "white" pills he was selling as 10/325, as opposed to the concentration of 10/500 in blue hydrocodone pills. *Id*. at 128. MacDonald testified that, based upon his previous experience in buying hydrocodone, he generally paid around $5 for a ten-milligram pill. Fromer charged MacDonald $61 for twelve pills, which is a price that MacDonald expected to pay for hydrocodone. After purchasing the pills from Fromer, MacDonald ingested the pills. He stated that he experienced the same physical effects that he had experienced on prior occasions when he had ingested hydrocodone. From this testimony, the jury could reasonably conclude that MacDonald was sufficiently experienced with hydrocodone to establish its identity. *See Cherry v. State*, 971 N.E.2d 726, 732 (Ind. Ct. App. 2012) (jury entitled to conclude from drug-user/witness testimony that witness knew how to identify heroin). MacDonald's testimony, coupled with other circumstantial

8

evidence, was sufficient to establish that the substance Fromer sold to MacDonald was hydrocodone.

### Section 3 – Appropriateness of Sentence

The sentencing range for a class A felony is between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Here the trial court imposed a forty-year sentence for Fromer's class A felony and a five-year sentence for the habitual substance offender finding, for an aggregate sentence of forty-five years.[4] Fromer requests that we reduce his sentence. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

Regarding the nature of the offense, Fromer sold prescription pain pills to MacDonald at least twice in a short period of time, and he sold several pills to MacDonald in each transaction. Fromer arranged the details of the most recent drug-deal through extensive text messaging. He arranged for the transaction to occur at his residence, which happened to be

---

[4] As we will discuss later, the trial court erred when it entered a separate five-year sentence based upon the habitual substance offender finding, and remand to the trial court is necessary for the purpose of correcting the sentencing order. *See Bauer v. State*, 875 N.E.2d 744, 747 (Ind. Ct. App. 2007), *trans. denied* (2008).

9

near the local high school. It appears that Fromer's dealing enterprise had become so involved that he invested in a Square credit card reader to process drug transactions. As noted by the State, Fromer's offense is beyond mere "low-level street dealing." Appellee's Br. at 19. We are not persuaded that the nature of the present offense supports a sentence reduction.

Regarding the nature of his character, Fromer fares even worse. The sheer volume of Fromer's prior offenses, spanning seventeen years, is impressive to say the least. In addition to countless misdemeanor arrests and convictions in multiple states, Fromer also has at least one prior felony conviction involving contraband in Florida. Fromer concedes that his criminal history is "extensive" but argues that the majority of his offenses were "petty traffic offenses and misdemeanors." Appellant's Br. at 23. Be that as it may, many of Fromer's prior offenses involve controlled substances, indicating not only his general disregard for the law, but also a blatant and habitual pattern of drug use and abuse. Fromer has failed to appear in court on at least twenty occasions, and the record indicates several prior probation violations. At the time of the instant offense, Fromer had violated the terms of yet another probation and had seven outstanding warrants for his arrest. The record does not reflect favorably on Fromer's character.

In sum, Fromer has not persuaded us that his forty-five year sentence is inappropriate in light of the nature of the offense and his character. However, the trial court erred when it entered a separate consecutive five-year sentence based upon the habitual substance offender finding. It is well settled that a habitual substance offender finding is not a separate crime

but an enhancement of the sentence for the underlying crime to which it is attached. *Bauer v. State*, 875 N.E.2d 744, 747 (Ind. Ct. App. 2007). Consequently, we remand to the trial court with instructions to correct its sentencing order to reflect an enhancement of Fromer's dealing conviction by five years rather than a separate sentence.

Affirmed and remanded.

NAJAM, J., concurs.

BAKER, J., concurs in part and in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

LOUIS P. FROMER,                          )
                                          )
    Appellant-Defendant,                  )
                                          )
        vs.                          )      No.  79A04-1306-CR-272
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.                   )
                                          )

**BAKER, Judge, concurring in part and in result.**

I agree with the majority's reasoning and disposition on every issue except for its analysis of the sufficiency of the evidence.  More particularly, the majority states: "MacDonald's testimony, coupled with other circumstantial evidence, was sufficient to establish that the substance Fromer sold to MacDonald was hydrocodone."  Slip op. at 8.

MacDonald, who the majority admits is a prescription drug abuser, testified that through text messaging, he arranged to buy hydrocodone from Fromer.  MacDonald stated that he knew it was hydrocodone because after ingesting the pills, he experienced the same effects that he had previously experienced after using hydrocodone.  The majority fails to articulate the circumstantial evidence that corroborates MacDonald's testimony; rather, it makes a bald assertion that such evidence exists.

12

Nevertheless, there is circumstantial evidence to which the majority could have highlighted. Specifically, on December 20, 2012, there was a flurry of text messages between MacDonald and Fromer establishing a sale of "[t]abbies." State's Ex. 5C. Additionally, when MacDonald informed Fromer that he was short on cash, Fromer told MacDonald that he had "the square card reader for ny [sic] phone." Id. Indeed, Detective Greene testified that a square card reader was collected during a search of Fromer's residence along with "a lot of pill bottles." Tr. p. 50.

While I agree that this circumstantial evidence coupled with MacDonald's testimony is sufficient to sustain Fromer's conviction, I feel compelled to highlight this evidence. Otherwise, it would appear that Fromer was convicted strictly on the testimony of an admitted drug abuser that Fromer sold him hydrocodone, which in my opinion raises sufficiency issues. Therefore, I concur in part and concur in result.